13 CIV 2258

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ANTHONY ODOM AND MICHAEL MCMICKELS,

                                             Plaintiffs,

                   -against-

CITY OF NEW YORK, POLICE OFFICER JASON
VASQUEZ, POLICE OFFICER JOHN DOES 1-3,

                                        Defendants.

------------------------------------------------------------------------ x

COMPLAINT AND
JURY DEMAND

Docket No.

ECF CASE

RECEIVED APR 05 2013 D.C. S.D. N.Y. CASHIERS

Plaintiffs Anthony Odom and Michael McMickel, by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

PRELIMINARY STATEMENT

1.     This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2.     The claim arises from a December 14, 2011 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, false arrest, false imprisonment, and malicious prosecution.

3.     Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

JURISDICTION

4.     This action arises under the Fourth and Fourteenth Amendments to the United

States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

VENUE

7. Venue is laid within the Southern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Southern District.

PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Police Officer Jason Vasquez was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant

Jason Vasquez was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Jason Vasquez was under the command of the 42nd precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Jason Vasquez was under the command of the 81st precinct and is sued in his individual capacity.

11.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

### NOTICE OF CLAIM

12.   Within 90 days of the events giving rise to these claims, plaintiffs filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

### FACTUAL ALLEGATIONS

13.   On December 14, 2011 at approximately 1:00 p.m., Mr. Odom and Mr. McMickel were in Mr. McMickel's car about to make a left turn from 165th Street to Boston Road in the Bronx.

14.   An unmarked police car cut them off in the intersection and four cops jumped out of the car.

15.   The police ordered plaintiffs out of the car and plaintiffs complied with the officers' orders.

16.   They were frisked, handcuffed and put in a police van.

17.   The officers unlawfully searched Mr. McMickel's car without his consent.

18.   For several hours, the officers drove plaintiffs around while they sat handcuffed in the van.

19.   The officers made several remarks about needing 8 people in the van before they could return to the precinct, apparently to fill their daily quota.

20.   Both Mr. Odom and Mr. McMickel were given DATs for criminal possession of marijuana and released after several hours.

21.   Neither Mr. Odom nor Mr. McMickel had marijuana on them at any time.

22.   An officer drove Mr. McMickel's car to the precinct, where it was returned to him.

23.   When the officers released plaintiffs and returned their property, several hundred dollars were missing.

24.   Both plaintiffs consented to adjournments in contemplation of dismissal.

25.   Mr. Odom's application to become a MTA bus operator was deferred repeatedly while the charges were pending.

26.   At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.   They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

27.   During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

28.  As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a.    Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b.    Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c.    Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d.    Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

    e.    Physical pain and suffering;

    f.    Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety;

    g.    Loss of liberty; and

    h.    Delayed or lost employment opportunities.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
False Arrest and False Imprisonment
(Against Officer Defendants)

29.  The above paragraphs are here incorporated by reference.

30.  The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiffs.

31.   The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

32.   At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

33.   Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

34.   At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

35.   All of this occurred without any illegal conduct by plaintiffs.

36.   Plaintiffs consented to an adjournment in contemplation of dismissal at their first court appearance.

37.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

38.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

39.   The above paragraphs are here incorporated by reference.

6

40.  The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiffs.

41.  The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

42.  At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

43.  Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

44.  At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

45.  All of this occurred without any illegal conduct by plaintiffs.

46.  Plaintiffs consented to an adjournment in contemplation of dismissal at their first court appearance.

47.  Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

48.  Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiffs' rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiffs.

49.  The officer defendants acted under pretense and color of state law and in their

individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the Constitution of the State of New York.

50.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

51.    The above paragraphs are here incorporated by reference.

52.    Defendants subjected plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

53.    Defendants intended to confine plaintiffs, plaintiffs were conscious of their confinement and did not consent to their confinement.

54.    Plaintiffs consented to an adjournment in contemplation of dismissal at their first court appearance.

55.    Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

56.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### FOURTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

57.    The above paragraphs are here incorporated by reference.

58.    Upon approaching, handcuffing and arresting plaintiffs, defendants made plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching.

59.    Defendants engaged in and subjected plaintiffs to immediate harmful and/or offensive touching and battered them without their consent.

60.    Defendants used excessive and unnecessary force with plaintiffs.

61.    Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

62.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

### FIFTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)

63.    The above paragraphs are here incorporated by reference.

64.    Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiffs to prevent the physical and mental abuse sustained by plaintiffs.

65.    Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a

position similar to plaintiffs' as a result of this conduct.

66.   Upon information and belief, defendant officers were incompetent and unfit for their positions.

67.   Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

68.   Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiffs' injuries.

69.   Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiffs incurred damages described above.

SIXTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

70.   The above paragraphs are here incorporated by reference.

71.   The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars

---

1 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011

stem from excessive force and false arrest.

72.   The widely held assumption is that civil rights lawsuits deter police misconduct.

"The purpose of § 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to victims if

such deterrence fails.  Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus,

435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent

[to civil rights violations], as we have assumed it is in other contexts." See Hudson v.

Michigan  547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534

U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost

axiomatic that the threat of damages has a deterrent effect (citation omitted) surely

particularly so when the individual official faces personal financial liability." Carlson v.

Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and

footnote 6 (1976).

73.   However, the City of New York has isolated NYPD officers from

accountability for its civil rights lawsuits and, as a result, is preventing civil rights

lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil

rights lawsuits against police officers have no impact on the officers' careers, regardless

of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect"

between the settlements of even substantial civil claims and police department action

---

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers
Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15,
2010 last available on December 9, 2010.

against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

74. The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

75. The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

76.     The City has been alerted to the regular use of false arrests by its police officers,

through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper

reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless

exhibited deliberate indifference to such false arrests; that deliberate indifference caused

the violation of plaintiff's constitutional rights in this case. In 2009, New York City has

seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out

more than $117 million in fiscal year 2009, compared to $80 million in 2008.[4] In the past

ten years, the City of New York has paid nearly a billion dollars on lawsuits brought

against the NYPD.[5]

77.     Nevertheless, the City has repeatedly resisted attempts to catalog even basic

information gleaned from civil rights lawsuits that could improve training, leadership,

supervision, and discipline in the NYPD.   The City's deliberate indifference towards the

contents of civil rights litigation,  towards individual officers repeatedly named in

lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of

misconduct that arise in civil rights litigation has caused the constitutional violations

against plaintiff.

78.     Additionally, according to a report of the New York City Bar Association issued

in 2000, the City has isolated its law department from the discipline of police officers.

Civil rights lawsuits against police officers have no impact on the officers' careers,

regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits.

---

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at
http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18,
2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers
Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15,
2010 last available on December 9, 2010.

Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

79.   The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373 were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[6]

80.   The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in

---

[6] See New York Civil Liberties Union "Stop and Frisk Report" available at http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on February 18, 2010. On the website, the NYCLU collects the same data back to 2004.

the violation of innocent New Yorker's civil rights.[7]

81.   The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB.   In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.   The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

82.   The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.   In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[8] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.   Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions.   This entire

---

[7] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.

[8] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

83. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

84. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362

(E.D.N.Y.)(Weinstein, J.).

85.   Defendant Jason Vasquez is known to the City of New York as an officer with a history of violating citizens' civil rights through lawsuits, social media, video-tape recordings of misconduct, citizens' complaints and yet this information has not caused the City of New York or the New York Police Department to revisit issues involving training, discipline, supervision or leadership issues with Vasquez.

86.   The 42nd precinct is known to the City of New York as a precinct with a high rate of civil rights lawsuits and yet the City and the Police Department has failed to track the 42nd precinct's lawsuit history, settlement history, or implement training, retraining, disciplinary, supervision or leadership programs that would address the problem of unusually high rates of civil rights lawsuits at this precinct.

87.   The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action.  This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

88.   Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.   In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B.   Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.    Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.    Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiffs demand a trial by jury.


DATED:        April 2, 2013
              Brooklyn, New York


TO:
              City of New York
              100 Church Street
              New York, NY 10007

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue, 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com